On Rehearing.
 

 OVERTON, J.
 

 The true issue, presented in this case, is whether plaintiff, as lessor, is entitled to be paid his proportionate part of the net sale price, or of the gross sale price, of the gasoline extracted from the gas, due him as royalty, produced from gas wells on the lease. In our former opinion, we held that defendant was entitled to payment on the gross sale price, and there said, among other things: “The terms of the lease obligate the lessor to pay the lessee a royalty of one-eighth of the gas produced, which means free of all cost.” We doubted the correctness of this ruling and of our decree, and therefore granted a rehearing.
 

 The contract, it may be said, would operate harshly, if it required defendant, after going to the expense of extracting the gasoline for the double purpose of preserving it for sale and of making the gas, containing the gasoline, usable and merchantable, to pay-plaintiff royalty on the basis of his proportionate share of the total gasoline extracted, without deducting the cost of the extraction.
 

 Even had defendant been in bad faith in reducing the gas to possession, which does not appear to be the case, since he obtained possession under a contract of mineral lease, granted by the owner of the land, nevertheless defendant would be entitled to the cost of extracting the gasoline, as a preservative measure. The gas was not usable with the gasoline in it. Plaintiff would not accept his proportionate part of the gas with the gasoline in it. Therefore there was nothing for defendant to do but to save the gas and the gasoline contents by having the gasoline liberated from the gas. To do this would redound to the benefit of plaintiff. Plaintiff, however, would be liable to defendant for the cost of the extraction of the gasoline in proportion to the amount thereof received by
 
 *1009
 
 him, for article 2314 of the Civil Code provides that: “He to whom .property is restored must refund to the person who possessed it, even in bad faith, all he had necessarily expended for the preservation of the property.” Nabors Oil & Gas Company v. Louisiana Oil Refining Company, 151 La. 361, 384 to 387, 91 So. 765.
 

 Since persons may be expected to contract with one another on a basis equitable to each, a contract should not be given a construction that will work a hardship on one of the parties, where this may be avoided without defeating, in whole or in part, the intention of the parties at the time of the execution of the agreement.
 

 Further consideration of the contract of lease leads us to the conclusion that such a construction may be made of the contract here. The royalty clauses in the contract obligate the lessee as follows: “(1) To deliver to credit of lessor, free of cost, in the pipe line to which he may connect his wells, the equal one-eighth part of all oil produced and saved from said leased premises; (2) to pay the lessor one-eighth (Ys) royalty for the gas from each well where gas only is found, while the same is being used off the premises; * * * [and] (3) to pay the lessor one-eighth royalty for gas produced from any oil well and used off the premises or for the manufacture of casing-head gas one-eighth (%) royalty. * * * ”
 

 The first clause relates to oil wells only, and the present well does not fall within the designation of an oil well. As to such wells, plaintiff is bound to deliver the one-eighth royalty, in kind, to plaintiff’s agent, the pipe line company, to be placed to his credit, free of cost. The second clause relates to wells producing gas only, and not oil and gas, the one-eighth royalty to be delivered to the lessor, which seems to be conceded to be in kind. Nothing is there said touching whether or not the delivery is to be made free of cost, as was done in the preceding clause, relative to oil wells. The third clause relates to gas produced from an oil well, there being none involved here, and to the manufacture of casing-head gas. There, the royalty is one-eighth of the gas produced or manufactured, and nothing is said concerning the cost of production or of manufacture. This clause does not aid in the construction of the question, here presented, and relates to a different class of gas, as shown by the context of the clause.
 

 It will be observed that, although in the first clause, touching oil wells, the royalty is to be delivered free of cost, nevertheless in the next clause, touching gas wells, no reference whatever is made to the delivery of the royalty free of cost. It does not follow, however, that it was the intention of the parties to the contract that it should, under all circumstances, be delivered free of cost, for, if such was the intention, there would have been no reason to omit from this clause the words “free of cost” which had been used in the preceding clause. What we think the clause contemplates is that, if the well should come in as a gas well, impregnated, which it did, with gasoline, which the parties had no particular reason to expect at the time of the execution of the contract, the law would step in, as a part of the contract, and say whether the royalty should be delivered free of cost. This we think the law has done by providing, in effect, that the cost of extraction, incurred by the lessee, to preserve the gas and its
 
 *1011
 
 gasoline content, by making both merchantable, should be deducted before computing and delivering tjie lessor’s royalty. Oiv. Code, art. 2314.
 

 The case of Wemple v. Producers’ Oil Co., 145 La. 1031, 83 So. 232, 238, does not militate against the view here expressed. In that case, the question of the right to royalty on gasoline produced from casing-head gas was involved. The contract made no reference to royalty on gasoline so produced. The court, however, allowed royalty on the gasoline, as it was part of the oil produced, without deducting the expense of extracting the gasoline, but the court, in refusing to allow such deduction, said: “If the treatment of the casing-head gas were shown, in this case, to involve an expense greater in proportion to the value of the product than that incurred in the production and handling of the oil, it would perhaps be proper to increase the allowance to the operator in a like proportion; but no such showing has been made.”
 

 The case of Gilbreath v. States Oil Corporation (C. C. A.) 4 F.(2d) 232, does not seem to be pertinent to the particular issue under consideration here. All that was held there was that, since casing-head gas, or gasoline,' produced from such gas, was part of the oil, the lessor was entitled to the one-eighth royalty, provided for oil produced.
 

 At this point, it should be observed that, defendant for a period of three months, at) the commencement of production, paid plaintiff royalty on the gasoline produced without making any deduction for the extraction of the gasoline. Defendant claims that the payments so made wore made in error, without the proper conception of its rights. Plaintiff urges that they show the construction of the contract, at its confection, made by both parties. We think, however, that the payments were made hastily, in misconception of defendant’s rights, and did not operate to plaintiff’s injury, in any respect, and therefore should not be regarded as being, in truth, defendant’s construction or be permitted to operate against it as an estoppel, or otherwise.
 

 The gas produced in this case, which is not, correctly speaking, casing-head gas (Thornton on Oil and Gas [5th Ed.] § 217, p. 377; Gilbreath v. States Oil Corporation, supra; Mussellem v. Magnolia Petroleum Co., 107 Okl. 183, 231 P. 526; section 13 of Act No. 252 of 1924), but is gas, taken from the earth, through a gas well, was sold by defendant to the Palmer Corporation, a subsidiary of defendant, which had a plant nearby for the extraction of gasoline. The gas, with its gasoline content, the latter being a part of the gas, was sold to that corporation for four cents a thousand feet. Two-thirds of the gas->line extracted was allowed for the extraction, and the remaining one-third was sold at the market rate prevailing at the time of the sales. This charge for extracting the gasoline does not seem to be out of accord with what is usually, or frequently, charged for that service, as will appear from quotations •from departmental bulletins of the United States, to be found in Wemple v. Producers’ Oil Co., 145 La. 1031, 1039, 1040, 83 So. 232; Mills-Willingham on Oil & Gas, p. 195, in a note, relative to departmental regulations of •the federal government, touching the Five Civilized Tribes and the Osage Indians. We should consider the charge such a one as is
 
 *1013
 
 fair and allow it. As the gasoline was part of the gas produced, and as the royalty on the gas is one-eighth, the allowance of the foregoing deduction entitles the royalty owner or owners to one-eighth of one-third of the gasoline extracted and saved and to one-eighth of the gas produced and saved, but, as plaintiff has sold all but
 
 s5/i0
 
 of the
 
 Ys
 
 royalty, he is entitled to only 3%0 of
 
 % oí Ys
 
 of the gasoline saved or the proceeds thereof, and to s%o of
 
 Ys
 
 of the gas produced and saved.
 

 For the months of October, November, and December, 1929, plaintiff, as already said, in effect, has been paid more than defendant was called upon to pay. For January, 1930, plaintiff tendered defendant a check for $477.03 in full payment of royalty on gas and a check for $224.24 in full payment of royalty on gasoline. The amounts of these checks were arrived at on the same basis as we have arrived at the royalty due. Plaintiff cashed them, after this suit was filed, with full reservation of his asserted rights. Therefore plaintiff has received all that was due him for January, 1929.
 

 Defendant has a reconventional demand for the excess payments, made by it in error, for the months of October, November, and December. However, defendant has not pressed the demand, and we therefore omit its consideration.
 

 Our original decree, as well as the decree of the district court, is set aside, and judgment is now rendered ordering plaintiff to receive and defendant to pay plaintiff
 
 ss/i0
 
 of
 
 Ys
 
 of the gas produced and saved and 3%0 of % of
 
 Ys
 
 of the gasoline extracted and saved from said gas, or (defendant appearing to be willing thereto) of the proceeds, at market value, in each month, of both the gas and gasoline, after the month of January, 1929, the “one-third” relating to the gasoline, to vary with such change as there may be in the cost of extracting it. In all other respects plaintiff’s demands are rejected, the costs of appeal to be paid by plaintiff, the costs of the lower court to be shared equally between the parties to this suit. 'The right is reserved plaintiff to ask for a rehearing.
 

 ST. PAUL, J., takes no part.
 

 ROGERS, J., dissents, adhering to the views expressed in the opinion on the original hearing.